IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**DEAMONTAE MANNING,**                        CASE NO. 3:24 CV 618

    Plaintiff,

    v.                                      JUDGE JAMES R. KNEPP II

**CORRECTIONS OFFICER
CHRISTOPHER HENRY,**

                                             **MEMORANDUM OPINION AND**
    Defendant.                          **ORDER**

## INTRODUCTION

Currently pending before the Court in this § 1983 civil rights action, alleging a use of excessive force, are Plaintiff DeAmontae Manning and Defendant Corrections Officer Christopher Henry's cross-motions for summary judgment. (Docs. 40, 42).[1] Jurisdiction is proper under 28 U.S.C. § 1331. For the reasons set forth below, the Court grants Defendant's motion and denies Plaintiff's motion.

## BACKGROUND

At all times relevant, Plaintiff was an inmate at the Ohio Department of Rehabilitation and Correction ("ODRC") Toledo Correctional Facility ("ToCI"). At issue in the present case is a use of force by Defendant ToCI Correctional Officer Lieutenant Henry and others on July 24, 2023. In his Verified Complaint,[2] Plaintiff alleges Defendant "intentionally and deliberately shov[ed] Plaintiff multiple times into a wall aggressively until Plaintiff['s] face began to bleed."

---

1. Also pending is Plaintiff's Motion of Documentation to Courts and Defendant's Attorney. (Doc. 37). Therein, Plaintiff requested a second copy of Defendant's discovery responses. As Plaintiff has attached these responses to his Motion for Summary Judgment (*see* Doc. 40-2), the Court denies the motion as moot.
2. Plaintiff's Complaint is verified, *see* Doc. 1, at 10, and thus can serve as an Affidavit for purposes of summary judgment. *El Bel v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008).

(Doc. 1, at 5). Specifically, Plaintiff asserts during an escort within the prison, he "turned from [Defendant] . . . in a non-aggressive manner, while in handcuffs and wearing a spit mask over [his] face." *Id.* at 7. He contends Defendant then "began repeatedly pushing [him], aggressively" and ultimately "pushing [his] body against the wall aggressively until [he] began to bleed from [his] face and become dizzy." *Id.* He contends this amounted to a "malicious[] and sadistic[] assault[.]" *Id.* at 8.

The incident was captured on video from both wall-mounted security cameras and body cameras worn by Defendant and Correctional Officer Tyler Reinhart-Anez. *See* Defendant's Exhibits B, C, D.[3]

Plaintiff was housed in the Transitional Program Unit at ToCI and assigned to a "strong cell," which is a cell designed for inmates with a history of assaulting staff. (Defendant Aff., Doc. 42-3, at ¶ 3). Plaintiff was classified as a "supervisor contact," a designation for inmates who have a serious history of assaulting staff. *Id.* at ¶ 6. Such a classification required a supervisor to be present whenever the inmate was handled by a prison staff member. *Id.*

At the time of the incident, Plaintiff was in a recreation cage "designed for inmates with a known history of staff assaults using bodily fluids or other materials such as spit, urine, and feces." *Id.* at ¶ 5. He had asked to be escorted back to his cell. *Id.* at ¶ 4. Plaintiff was placed in handcuffs and Defendant and others began to escort him back to his cell. *Id.* at ¶ 7. Defendant was present as the supervisor due to Plaintiff's status. *Id.* at ¶ 6.

Defendant and fellow Correctional Officer Reinhart-Anez approached Plaintiff in the recreation cage. (Ex. D, at 3:03:07-15). Defendant handcuffed Plaintiff through the handcuff

---

3. Exhibit B is the video from Defendant's body worn camera, Exhibit C is the video from Officer Reinhart-Anez's body worn camera, and Exhibit D is the wall-mounted security camera footage. (Derek Burkhart Aff., Doc. 42-4, at ¶¶ 8-10.

2

port. (Ex. C, at 0:00:44-:54). When Plaintiff put his hands through the port, he was holding a manila envelope, which he held onto after being handcuffed. *See id.* As Defendant began to escort Plaintiff, Plaintiff stated he needed to retrieve some "papers" from another inmate as he was turning away from Defendant. (Ex. B, at 0:50-:55); *see also* Doc. 1, at 7 ("I requested to retrieve my paper from another inmate[']s door frame."). The video shows Plaintiff turning and pulling slightly away from Defendant as he makes this request and Defendant says, "No. Come on," while holding Plaintiff's right arm with his left hand. (Ex. C, at 1:08-:12); (Ex. B, at 0:50-1:05). Defendant avers Plaintiff requested to retrieve these papers from another inmate who was housed in a "constant watch" cell, but that he determined there was "no legitimate reason" for Plaintiff to receive anything from such person. (Defendant Aff., Doc. 42-3, at ¶ 8). Defendant further avers that after he denied Plaintiff's request, Plaintiff "began to resist the escort." *Id.* at ¶ 9. As the officers escorted Plaintiff, Defendant continued to say, "Come on", while guiding Plaintiff by the arm, and Plaintiff continued to ask about the "papers". *See* Ex. B, at 0:50-1:05; Ex. C, at 1:07-:23. The videos depict that as the officers approach a doorway, Plaintiff turned abruptly around to face Defendant, seemingly slipping out of Defendant's hold on his arm. (Ex. B, at 1:07-:11); (Ex. D, at 03:04:00-:02). At the same time, the manila envelope Plaintiff was holding flies across the room. (Ex. D., at 03:04:00-:02). Defendant describes Plaintiff's actions as "quickly and aggressively sp[inning] around, breaking away from [Defendant's] escort hold" and "turn[ing] to face" Defendant. (Defendant Aff., Doc. 42-3, at ¶ 10). He avers that "[g]iven [Plaintiff's] serious and documented history of staff assaults, [he] made a split-second decision to close the distance between [them] in order to reduce the chance that he could launch an assault on [Defendant] or [his] escort partner." *Id.* at ¶ 11. Within seconds, the officers pushed Plaintiff through the doorway they were approaching and up against a wall/window on the other side. (Ex.

3

D, at 03:04:00-05); (Ex. B, at 1:08-:11); *see also* Defendant Aff., Doc. 42-3, at ¶ 12 ("I placed [Plaintiff on the wall outside the South Pod, where he continued to physically resist and refused to comply with verbal directives."). The video depicts the officers held Plaintiff against the wall for less than ten seconds, before attempting to resume the escort. *See* Ex. D., at 3:04:05-:13. It next shows the officers attempting to resume moving Plaintiff, but seeming to struggle to maintain control; Defendant, Officer Reinhart-Anez, and another officer then push Plaintiff up against another wall and hold him there for approximately fifteen seconds, while other officers arrive to assist. (Ex. D., at 3:04:14-:42).

Throughout, Plaintiff repeatedly requested his "envelope", Defendant asked someone to retrieve the envelope and another correctional officer did so. *See* Ex. B., at 1:14-:35; Ex. D., at 03:04:29-:32.

Defendant and other officers then continued to escort Plaintiff into the next room; someone can be heard instructing Plaintiff to "walk" repeatedly. (Ex. B, at 00:01:35-49). The officers then placed Plaintiff against another wall/window and another supervisor took over for Defendant. (Ex. B., at 1:48-:51); *see also* Defendant Aff., Doc. 42-3, at ¶ 16. There is no evidence Defendant had any further contact with Plaintiff.

Plaintiff submits medical evidence that his injuries were "two small lacerations . . . above [his] left eyebrow", which were cleaned, treated with bacitracin, and covered with a band aid. (Doc. 40-1, at 1). This is consistent with his Complaint's assertion that he was treated by a nurse who "used peroxide to clean the blood from the left side of [his] face where the gashes were and put antibiotic ointment over [the] gashes before putting bandages over [his] face." (Doc. 1, at 8).

4

**STANDARD OF REVIEW**

Summary judgment is appropriate where there is "no genuine dispute as to any material fact" and "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, the Court must draw all inferences from the record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the Court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The moving party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

This burden "may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id.* The nonmoving party must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson*, 477 U.S. at 257; *see also* Fed. R. Civ. P. 56(c)(1). Further, the nonmoving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine dispute of material fact. *See* Fed R. Civ. P. 56(c)(3) (noting the court "need consider only the cited materials").

A genuine issue of material fact generally does not exist where the record could not "lead a rational trier of fact to find for the non-moving party[.]'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. This is true even when opposing parties allege two different sets of facts but one is "blatantly contradicted by the record, so that no reasonable jury could believe it[.]" *Scott v. Harris*, 550 U.S. 372, 380 (2007). However, the court must view any facts that are not blatantly

5

contradicted by the record in the light most favorable to the non-moving party. *Coble v. City of White House*, 634 F.3d 865, 870 (6th Cir. 2011).

## DISCUSSION

Defendant moves for summary judgment asserting: (1) any official capacity claim against him is barred by the Eleventh Amendment; and (2) Plaintiff cannot establish either the objective or subjective component of his Eighth Amendment excessive force claim. *See* Doc. 42 at 6-10. Defendant further asserts he is entitled to qualified immunity because Plaintiff has not demonstrated that Defendant violated a clearly established constitutional right. *See id.* at 10-12. For the reasons discussed below, the Court finds Defendant is entitled to summary judgment because Plaintiff has not established a constitutional violation.

Official Capacity Claim

Defendant first contends that to the extent Plaintiff brings a claim against him in his official capacity, such a claim is barred by the Eleventh Amendment. (Doc. 42, at 6). Plaintiff does not respond to this argument. *See* Doc. 44.

Plaintiff's Complaint states that Defendant "is sued in his individual capacity." (Doc. 1, at 6); *see also id.* at 2 (indicating Defendant is only sued in his individual capacity). Thus, it does not appear he brings an official capacity claim. Nevertheless, Defendant is correct that he is immune from any official capacity damages claim. A suit against a state official operates as an action against the State itself. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989). The State of Ohio has not waived its sovereign immunity, nor has it consented to civil rights suits in federal court. *Mixon v. Ohio*, 193 F.3d 389, 397 (6th Cir. 1999). Thus, any official capacity

6

claims are barred by sovereign immunity. *WCI, Inc. v. Ohio Dep't of Pub. Safety*, 18 F.4th 509, 513-14 (6th Cir. 2021).[4]

Individual Capacity Claim

Defendant argues Plaintiff cannot prove his excessive force claim. Specifically, he contends that Plaintiff cannot establish a question of fact regarding either the objective or subjective element required to prove an Eighth Amendment claim. *See* Doc. 42, at 6-10. For the reasons set forth below, the Court finds Plaintiff has not presented evidence to establish a genuine issue of material fact regarding the subjective prong, and for that reason, Defendant is entitled to judgment in his favor.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Section 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred[.]" *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). Plaintiff brings his claim under the Eighth Amendment.

The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The

---

4. Defendants cite Eleventh Amendment immunity rather than sovereign immunity. The Sixth Circuit has explained that although "courts have often treated Eleventh Amendment immunity and sovereign immunity as interchangeable. . . as a matter of original meaning, the two are conceptually distinct." *WCI, Inc.*, 18 F.4th at 513. It distinguished immunity under the Eleventh Amendment as sounding in subject-matter jurisdiction and containing a diversity requirement from sovereign immunity which "refers to a state's right 'not to be amenable to the suit of an individual without its consent'", sounds in personal jurisdiction, and does not require diversity. *Id.* at 514 (citing The Federalist No. 81, at 486 (Alexander Hamilton) (Clinton Rossiter ed., 1961) (emphasis omitted)). Here, Plaintiff is housed in an Ohio prison and sues Ohio prison officials. Therefore "[b]ecause the parties are not diverse, sovereign immunity applies, and the Eleventh Amendment, by its plain terms, does not." *Id.*

7

Supreme Court has long held that the Fourteenth Amendment incorporates the Eighth Amendment's ban on "cruel and unusual punishments" against the States. *See Robinson v. California*, 370 U.S. 660, 666-67 (1962). The Court has also long held that this ban does not just cover the formal "punishment" that a state court metes out to criminal defendants. The ban also applies to informal harms that prison officials inflict on convicted prisoners during their terms of incarceration. The Eighth Amendment thus regulates, *inter alia*, the force that prison guards use on prisoners. *See Whitley v. Albers*, 475 U.S. 312, 320 (1986). The ban on cruel and unusual punishments prohibits the "unnecessary and wanton infliction of pain" on prisoners. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (quoting *Whitley*, 475 U.S. at 319); *see also Rhodes v. Chapman*, 452 U.S. 337, 346 (1981).

The "unnecessary and wanton infliction of pain" requirement "has objective and subjective components, both of which follow from the Eighth Amendment's text." *Johnson v. Sootsman*, 79 F.4th 608, 615 (6th Cir. 2023).

> Objectively, harm to a prisoner must rise to a sufficiently serious level because the Eighth Amendment prohibits only "cruel and unusual" deprivations, not just uncomfortable or "even harsh" ones. *Rhodes*, 452 U.S. at 347, 101 S.Ct. 2392; *see Phillips*, 14 F.4th at 534. Subjectively, harm to a prisoner must result from a prison official's sufficiently volitional actions because the Eighth Amendment bars only willful conduct that "inflict[s]" "punishment," not accidental conduct that causes injury. *See Phillips*, 14 F.4th at 535 (citing *Wilson v. Seiter*, 501 U.S. 294, 300, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)).

*Id.*

"As a subjective matter . . . prisoners who challenge a correctional officer's use of force must prove more than that the officer acted with 'deliberate indifference' to whether the force was necessary (the type of intent that prisoners must prove to challenge their conditions of confinement or medical care)." *Id.* at 616 (citing *Hudson*, 503 U.S. at 5-6). "The Court has instead described the 'core judicial inquiry' in this use-of-force context as distinguishing

8

between force used in a 'good-faith effort to maintain or restore discipline' and force used 'maliciously and sadistically to cause harm.'" *Id.* (quoting *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010)); *see also Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992) ("[I]n the prison context, good faith use of physical force may be necessary to maintain prison security and discipline[.]"). "Only the latter kind of force—force exerted maliciously and sadistically to inflict pain—violates the Eighth Amendment." *Johnson*, 79 F.4th at 616. "So even if an officer uses force because of an 'unreasonable' belief that it is necessary to restrain a prisoner, the officer does not violate the Eighth Amendment." *Id.* (quoting *Whitley*, 475 U.S. at 324). The Eighth Amendment "necessarily excludes from constitutional recognition *de minimis* uses of physical force" so long as the use of force is not the type of force that would be "repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9-10 (quoting *Whitley*, 475 U.S. at 327). "The negligent use of force—even the reckless use of force—does not establish an Eighth Amendment claim; [Plaintiff] must prove the malicious use of force for the exclusive purpose to inflict pain." *Johnson*, 79 F. 4th at 621.

> To decide whether a jury could find that an officer acted with this malicious intent, the Supreme Court has identified several factors to consider: What was the extent of the prisoner's injury? What was the nature of the threat that justified the use of force? Was the amount of force proportional to the threat? And did the officer take any actions designed to reduce the required amount of force?

*Id.* at 618. Courts also approach such claims with deference to avoid "unreasonable *post hoc* judicial second-guessing" of officers' conduct. *Lockett v. Suardini*, 526 F.3d 866, 875 (6th Cir. 2008); *see also Johnson*, 79 F.4th at 618 ("[W]hile judges may review an encounter by slowing down, pausing, and replaying a video, officers have no such luxury. They must make quick decisions in the heat of the moment.").

9

On review of the evidence presented in accordance with the above guidance, the Court finds Plaintiff has not established a genuine issue of material fact regarding the subjective element of his Eighth Amendment excessive force claim.

First, "although the Eighth Amendment does not require a prisoner to suffer a 'serious injury,' the 'absence' of such an injury goes a long way to disprove any claim that an officer used force with the required intent to harm." *Johnson*, 79 F.4th at 618-19 (quoting *Hudson*, 503 U.S. at 7-8). The Sixth Circuit has denied a prisoner's Eighth Amendment claim when an officer's use of force caused the prisoner minimal injuries such as "only some tenderness, bruising, and slight swelling[,]" *Bullocks v. Hale*, 2021 WL 1578198, at *2 (6th Cir.), or "minor lacerations and cuts," *Lockett*, 526 F.3d at 876; *see also Richmond v. Settles*, 450 F. App'x 448, 453–54 (6th Cir. 2011). Plaintiff's evidence shows, at most, that he suffered caused "minor injuries[.]" *Lockett*, 526 F.3d at 876; *see* Doc. 40-1, at 1 (objective physical findings of "two small lacerations" treated by cleaning, application of bacitracin, and covered with a bandaid.).

Second, Defendant had a "plausible basis" to believe Plaintiff presented a threat at the time of the use of force. *Whitley*, 475 U.S. at 323. Defendant avers that Plaintiff was "resist[ing] the escort" and "quickly and aggressively spun around, breaking away from [his] escort hold, and turned to face [Defendant]." (Defendant Aff., Doc. 42-3, at ¶¶ 9-10). Although Plaintiff contends he turned "in a non-aggressive manner" (Doc. 1, at 7) and that he was not "intentionally" resisting the escort (Doc. 44, at 1), the videos confirm that Plaintiff suddenly turned his body toward Defendant and the other officer and the manila envelope he was holding flew across the room.[5] And it is not Plaintiff's subjective intent that matters, but how it would be

---

5. Plaintiff contends that due to the handcuffs, he "didn't have the ability to throw the manila envelope." (Doc. 44, at 1). Regardless of whether it was thrown intentionally or not, the video

perceived by a reasonable officer in Defendant's position. *See, e.g., Rudlaff v. Gillespie*, 791 F.3d 638, 642 (6th Cir. 2015) ("His purported subjective intent to comply with the officers' requests fares no better, for we view his actions *objectively*, from the perspective of a reasonable officer at the scene."); *Murray-Ruhl v. Passinault*, 246 F. App'x 338, 350 (6th Cir. 2007) ("[T]he subjective intent of the [individual]—unavailable to the officers who must make a split-second judgment—is irrelevant to the question whether his actions gave rise to a reasonable perception of danger.") (Boggs, J., concurring). The Court finds that a reasonable officer in Defendant's position certainly had a plausible basis to conclude that Plaintiff, making a sudden movement with his entire body, presented a threat and some use of force was permissible. This is so despite the fact that Plaintiff was handcuffed. Defendant's knowledge of Plaintiff's prior misconduct and status designated as a "supervisor contact" further informed the risk assessment. Further, even if, "in retrospect," a jury found "unreasonable" Defendant's belief that Plaintiff was resisting the escort or presented a threat, the totality of the circumstances would not permit a reasonable jury to draw the more demanding inference that Defendant used force for no other reason than to inflict pain or injure him. *Whitley*, 475 U.S. at 319, 324.

Third, the video evidence demonstrates the force used was proportional "to the need for forcibly bringing [Plaintiff] under control[.]" *Lockett*, 526 F.3d at 876. The Sixth Circuit has found similar levels of force proportional. *See id.* ("[s]hoving" or "grabbing" a prisoner to gain control); *Williams v. Johnson*, 55 F. App'x 736, 736-37 (6th Cir. 2003) ( "grabb[ing]" an inmate "by the arm" while "attempting to shove him into a closed door"); *Begley v. Tyree*, 2018 WL 3244508, at *3 (6th Cir.) ("grabb[ing]" an inmate "by his arms", moving him, and either taking him to the floor or falling to the floor); *Brooks v. Fed. Bureau of Prisons*, 1999 WL 427179, at

---

depicts that the envelope traveled all the way across the room. And, as discussed further below, what matters is not Plaintiff's intent, but a reasonable officer's perception.

\*2 (6th Cir.) (pushing and holding a prisoner against a wall to handcuff him); *Griffin v. Hardrick*, 604 F.3d 949, 954-56 (6th Cir. 2010) (using a leg sweep maneuver to take a prisoner to the ground so she could be handcuffed and returned to her cell). Here, Defendant pushed Plaintiff against a wall to gain compliance.

Fourth and finally, Defendant's use of force was brief, lasting mere seconds each time Plaintiff was pushed or placed against the wall. This "shows that [Defendant] 'temper[ed] the severity' of the force." *Johnson*, 79 F.4th at 620 (quoting *Whitley*, 475 U.S. at 321). "The video discloses that he did not land any blows that could be described as extraneous to the goal of gaining control of [Plaintiff]." *Id.*

The Court therefore finds that "no reasonable jury could find that [Defendant's] actions arose from a sadistic intent to inflict pain on [Plaintiff]" rather than – at most – a "mistaken[] belief of the need to restrain him." *Id.* As such, Plaintiff has not established an Eighth Amendment violation and Defendant is entitled to summary judgment.[6]

## CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Plaintiff's Motion of Documentation (Doc. 37) be, and the same hereby is, DENIED as moot; and it is

FURTHER ORDERED that Plaintiff's Motion for Summary Judgment (Doc. 40) be, and the same hereby is, DENIED; and it is

---

6. Due to Plaintiff's inability to establish a constitutional violation, much less a clearly established one, Defendant is entitled to qualified immunity. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (qualified immunity shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.").

FURTHER ORDERED that Defendant's Motion for Summary Judgment (Doc. 42), be and the same hereby is, GRANTED; and the Court

FURTHER CERTIFIES, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

 s/ *James R. Knepp II*
UNITED STATES DISTRICT JUDGE

Dated: August 18, 2025